# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS FINAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:06-CV-878 CAS |
| | ) | |
| GOOD EARTH TOOLS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on various post-trial motions filed by the parties, including defendants' motions for judgment as a matter of law, for a new trial and/or to remit damages, and plaintiff's motions for entry of prejudgment interest and equitable relief, including front pay, and for attorneys' fees and costs. For the following reasons, the Court will deny defendants' motions and grant in part plaintiff's motions for prejudgment interest, front pay, and attorneys' fees and costs.

### *Background*

Plaintiff Thomas Finan brought a two-count complaint against defendants Good Earth Tools, Inc., and Ballast Tools, Inc., for alleged violations of Title I of the American with Disabilities Act of 1991, 42 U.S.C. § 12112(a) ("ADA"). Plaintiff alleged defendants failed to provide him reasonable accommodation for his disability and that they terminated his employment on account of his disability. The Court granted in part and denied in part defendants' motion for summary judgment. Partial judgment was entered in favor of defendants on plaintiff's claim that defendants failed to reasonably accommodate his disability.

The parties went to trial on plaintiff's claim of unlawful termination. At trial, plaintiff proceeded under a theory that he was able to work, without accommodation, at the time of his discharge, but that defendants perceived him as being disabled, and that it was his perceived

disability that was the basis for his termination. Defendants presented evidence that there were legitimate grounds for plaintiff's termination, but that in any event, plaintiff was not a qualified individual under the ADA because he was unable to work with or without reasonable accommodation. The jury returned a verdict in favor of plaintiff. The jury awarded plaintiff $410,000.00 for lost wages and benefits, and $65,000.00 in compensatory damages.

*Discussion*

## I. DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW, FOR A NEW TRIAL AND REMITTITUR

### A. Defendants' Motion for Judgment as a Matter of Law

Defendants argue that judgment as a matter of law should be entered in their favor notwithstanding the verdict because: (1) plaintiff was not a qualified individual under the ADA because he could not perform the essential functions of his job; (2) plaintiff was not entitled to a reasonable accommodation because he was proceeding under a perceived disability claim; (3) there was insufficient evidence that plaintiff was the victim of perceived disability discrimination; and (4) plaintiff filed an untruthful and misleading financial affidavit in support of his wife's motion to proceed in forma pauperis in the associated case, Margaret E. Finan v. Good Earth Tools, Inc., et al., case number 4:06-CV-171 CAS.[1]

_____

[1]Plaintiff filed a separate complaint against defendants on his wife's behalf alleging defendants interfered with his wife's right to medical benefits because they terminated his employment due to the high costs of Mrs. Finan's healthcare expenses. He also alleged defendants did not provide Mrs. Finan adequate notice of her rights to continued healthcare coverage under the Good Earth Tools medical plan, and that defendants failed to provide plan documents and other information as requested. This case, Margaret E. Finan v. Good Earth Tools, Inc., et al. was given case number 4:06-CV-171 CAS. The above-caption cause of action, in which Mr. Finan brought his own claims against defendants, was filed separately and was given case number 4:06-CV-878 CDP. It was originally assigned to the Honorable Catherine D. Perry. Defendants moved to consolidate the two actions, arguing there were common questions of law and fact at issue. The motion was granted, and case number 4:06-CV-878 CDP was consolidated with 4:06-CV-171 CAS and assigned to the undersigned district judge. On October 15, 2007, the Court granted summary judgment as to all

A party seeking to overturn a jury verdict based on the insufficiency of the evidence faces an onerous burden. See United States v. Big D Enter., Inc., 184 F.3d 924, 929 (8th Cir. 1999). "Judgment as a matter of law is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party." Henderson v. Simmons Foods, Inc., 217 F.3d 612, 615 (8th Cir. 2000) (internal punctuation and citations omitted). "The Court 'may not make credibility determinations or weigh the evidence.'" Kartheiser v. American Nat'l Can Co., 271 F.3d 1135, 1137 (8th Cir. 2001) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). "A jury verdict should not be overturned unless there is a complete absence of facts to allow a jury to reach its conclusion." Athey v. Farmers Ins. Exch., 234 F.3d 357, 362 (8th Cir. 2000).

In ruling on a motion for judgment as a matter of law, the district court must (1) consider the evidence in the light most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party; (3) assume as proved all facts that the prevailing party's evidence tended to prove; and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. Ryther v. KARE 11, 108 F.3d 832, 844 (8th Cir. 1997). "That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence." Haynes v. Bee-Line Trucking Co., 80 F.3d 1235, 1238 (8th Cir. 1996) (citations and internal quotations omitted). In an employment discrimination case, a court must render judgment as a matter of law for the defendant when there is no legally sufficient basis for a "rational factfinder" to conclude the

counts of the complaint in case number 4:06-CV-171 CAS. The association between the two cases was then severed.

employer intentionally discriminated.  Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1045 (8th Cir. 2002) (citing Reeves, 530 U.S. at 148).

In regard to defendants' first argument, that plaintiff could not perform the essential functions of his job, the Court does not agree with defendants' characterization of the evidence.  Critical throughout this case has been the issue of timing – an issue the Court believes defendants have not fully appreciated.  Plaintiff's medical condition changed over time.  There were periods of time when plaintiff was unable to perform his job without, or perhaps even with, accommodation.  But there were times when he could perform his job without any accommodation.  Substantial evidence was presented that Mr. Finan was performing the essential functions[2] of his job, without any accommodation, at the time of his discharge, and that he had been performing those functions for over four months.  Defendants' contention that plaintiff's epilepsy was and is so severe and uncontrolled as to prevent him from working was disputed by the evidence plaintiff presented.  Plaintiff presented evidence that he was able to work, without accommodation, at the time of his discharge and that he could work going forward.  Defendants are not entitled to judgment on the basis that plaintiff was unable to perform the essential functions of his job at the time of his discharge.

Defendants' second ground for judgment as a matter of law is also without merit.  Defendants argue they are entitled to judgment as a matter of law because plaintiff was not entitled to a reasonable accommodation because he was proceeding on a perceived disability claim.  The Court believes defendants are misguided in their argument.  Whether defendants provided plaintiff with a

---

[2]The Court would also note there was a dispute of facts as to what were the essential functions of Mr. Finan's job.  Defendants presented evidence that the essential functions were much more demanding and onerous that what plaintiff claimed they were.  They presented evidence that he was required to climb ladders, lift heavy objects, and "navigate dangerous work zones."  Plaintiff, however, refuted this evidence with his own testimony.

reasonable accommodation was not an element in the case, and it was not part of the jury instructions.

As for defendants' third ground for judgment as a matter of law, that there was no sufficient, substantial, or competent evidence from which a reasonable jury could have found plaintiff was the victim of perceived disability discrimination, the Court again does not agree with the defendant's characterization of the evidence presented at trial. Plaintiff presented evidence, albeit some of it disputed, that defendants placed Mr. Finan on involuntary leave on account of his medical condition, although he had been released to return to work; that they delayed in responding to and rejected Mr. Finan's requests for accommodation; that they restricted his access to customers and limited the products he was allowed to sell; that they placed unreasonable sales goals upon him, which had not been in place before the onset of his epilepsy; that they miscalculated and manipulated his sales figures; and that they arbitrarily imposed a notice requirement for vacations, which was not a company policy at the time and not equally applied to other employees. Plaintiff also put on evidence that defendants exaggerated his seizure disorder. He testified that while officers of the companies claimed to have observed him having seizures at various times, which plaintiff testified he did not himself perceive, these officers did not address concerns about these seizures to plaintiff at the time they occurred, nor did they offer to drive him home or seek medical attention. In sum, there was sufficient evidence for a jury to conclude defendants held a discriminatory animus toward plaintiff, and that he was the victim of perceived disability discrimination.

With respect to defendants' fourth argument, that they are entitled to judgment as a matter of law because plaintiff filed what they have characterized as a misleading financial affidavit, the Court has already decided this issue against defendants in its October 15, 2007 summary judgment order. This ruling is the law of the case, and the Court will not reconsider the issue.

Defendants fail to meet the heavy burden for judgment as a matter of law because ample evidence was presented to support the jury's verdict. Many of defendants' arguments concern the weight of the evidence, which is not appropriate for review on a motion for judgment as a matter of law. Viewing the evidence in the light most favorable to plaintiff, the Court finds that defendants' motion for judgment as a matter of law should be denied.

### B.  Defendants' Motion for a New Trial

Defendants alternatively move for a new trial pursuant to Federal Rule of Civil Procedure 59. Defendants assert they are entitled to a new trial because: (1) plaintiff offered evidence regarding his requests for accommodation, even though such evidence is not relevant to a "perceived as" disability claim; (2) the Court excluded evidence regarding the fact plaintiff filed a false financial affidavit; (3) the jury's verdict was against the weight of the evidence; and (4) evidence relating to an award of back pay should have been excluded from the jury because plaintiff admitted he could not work and has not been able to work.

It is almost entirely within the discretion of the trial court whether to grant a new trial. See Federal Rule of Civil Procedure 59(a); Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996). The key question is whether a new trial is required to avoid a miscarriage of justice. Belk, 228 F.3d at 878.

In regard to defendants' first argument, that they were prejudiced by the inclusion of evidence regarding plaintiff's requests for accommodation, the Court does not agree  that this evidence was irrelevant to the case or that defendants were unduly prejudiced by the inclusion thereof. The Court recognizes persons with a perceived disability are not entitled to an accommodation under the ADA,

6

Weber v. Strippit, Inc., 186 F.3d 907, 917 (8th Cir. 1999), and, accordingly, it was not an element in the case. This is not to say, however, that defendants' delayed response to plaintiff's requests for accommodation was not relevant to plaintiff's perceived disability claim or to rebut defendants' defenses. As defendants admit, there were times when plaintiff was unable to work without accommodation on account of his epilepsy, and he did make requests for accommodation, which went unanswered for weeks if not months. How defendants responded to plaintiff's requests for accommodation is probative as to whether they harbored animosity toward him on account of his disability. Kells v. Sinclar Buick-GMC Truck, Inc., 210 F.3d 827, 834 (8th Cir. 2000). Furthermore, defendants raised as a defense the fact that Mr. Finan applied for disability benefits claiming he was unable to work. Plaintiff was allowed to rebut defendants' assertion that he had admitted he could not work by explaining he could have worked at the time he applied for benefits had he been given an accommodation as he had requested. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 802 (1999). At trial, the Court allowed plaintiff to present limited evidence regarding his requests for accommodation, and the Court allowed defendants to respond to this evidence. The jury instructions did not include language regarding the requested accommodations or the accommodations defendants did or did not make. In sum, the evidence was not entirely irrelevant to the case, and defendants were not unduly prejudiced by the inclusion of such evidence.

In regard to defendants' second argument, that they are entitled to a new trial because the Court excluded what they have characterized as a false financial affidavit, this argument has been raised and addressed in the motion for summary judgment and motions in limine. As stated above, the issue had been decided and the Court will not reconsider its ruling.

The Court does not agree with defendants' third argument that the verdict was against the weight of the evidence presented at trial. In reviewing a motion for a new trial on the ground that

the jury's verdict is against the weight of the evidence, the Court is free to weigh the evidence for itself and grant a new trial even where substantial evidence exists to support the verdict. Dominium Mgmt. Servs., Inc. v. Nationwide Hous. Group, 195 F.3d 358, 366 (8th Cir. 1999); see White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992). "Ultimately, the district court must determine if there will be a miscarriage of justice if the jury's verdict is allowed to stand." Dominion, 195 F.3d at 366 (citing White, 961 F.2d at 780). A miscarriage of justice occurs when there is insufficient evidence to support the verdict. Douglas County Bank & Trust Co. v. United Fin. Inc., 207 F.3d 473, 478 (8th Cir. 2000). As discussed above, there was sufficient evidence for a jury to have concluded plaintiff established his prima facie case, and that he was ultimately discharged on account of his perceived disability.

Finally, defendants' fourth argument, that they are entitled to a new trial because evidence should have been excluded regarding plaintiff's back wages, is also without merit. As discussed in more detail above and below, plaintiff presented sufficient evidence that he was able to work at the time of his termination and for some time thereafter. Defendants attempted to rebut this evidence by presenting testimony and documents that tended to show otherwise. Defendants' evidence, while valid, was not definitive – it was disputed. For example, through Sherry Browning's testimony, defendants attempted to establish that plaintiff continued to have, following his discharge, numerous uncontrolled seizures about which he was unaware. The seizures she described, however, were "witnessed" over the telephone, and Ms. Browning is not a medical doctor trained to diagnose seizures. She also testified that sometime in 2005 she received a report that Mr. Finan was observed overnight in a medical facility and that he was recorded as having over 20 seizures. Setting aside the issue of hearsay, Ms. Browning was not present during the observation, and she could not say whether Mr. Finan was or was not taking his seizure medication at the time of the observation. Mr.

Finan presented evidence that he was and is able to work, and at the end of the day, there was sufficient evidence to submit to the jury the issue of back wages. The Court will deny defendants' motion for a new trial. There was sufficient evidence to support the verdict. Based on the Court's observations during trial, the verdict was not against the weight of the evidence, excessive, or the result of a miscarriage of justice.

### C. Defendants' Motion for Remittitur

Finally, defendants request remittitur on the judgment for back pay. Defendants assert they are entitled to a reduction in the damages award because plaintiff repeatedly admitted he could not work and has not been able to work since before the date of his discharge. In support of this argument, defendants once again point to plaintiff's application for private disability insurance and admissions he made to the Social Security Administration. These same arguments were made in defendants' motion for summary judgment, although additional evidence was presented at trial.

There was evidence presented at trial that in April 2003 plaintiff applied for disability benefits through his private insurer, Principal Financial. Mr. Finan testified it was his understanding that he was entitled to disability benefits through Principal Financial if he had a disability or illness; he had a loss of income of 20% or more; and he was under a doctor's care. This evidence was not disputed, and a copy of the policy was never entered into evidence. Mr. Finan applied for private disability benefits after defendants placed him on an unpaid and involuntary administrative leave. At the time, Mr. Finan had been diagnosed with a seizure disorder, and he was under the care of a doctor. His condition was not controlled at the time, and he was directed to follow "seizure precautions." As he noted in his application, driving was "problematic." But Mr. Finan's condition changed. On September 5, 2003, Mr. Finan's treating physician, Dr. Tempel, released him to return to work, without any seizure precautions, including driving restrictions. Indeed, Mr. Finan did return to work

for defendants, without restrictions, in October 2003, and he continued to work, without restrictions, until the date of his discharge.

At trial, defendants attempted to undermine the effect of Dr. Tempel's release by presenting evidence that not only did Mr. Finan have uncontrolled seizures before and after the date of the release, some of which he was not even aware, but that he was not reporting these seizures to his physician. Defendant's evidence, however, was refuted. Mr. Finan testified that he was aware of episodes he was having, and that he did report incidents to Dr. Tempel, who did not testify, and yet, he was still released to return to work without restrictions. In sum, the Court concludes that the fact that in April 2003 Mr. Finan applied for private disability benefits under a policy with its own standard as to what constitutes disabled does not establish Mr. Finan was unable to work at the time of his discharge or thereafter.

Defendants also argue Mr. Finan's application for Social Security benefits and the fact he received these benefits preclude plaintiff from claiming his is able to work. Again, the Court does not agree. Mr. Finan testified he reluctantly applied for Social Security disability benefits at the behest of Principal Financial, despite the fact that he believed he was able to work. Mr. Finan also testified that he did not complete the Social Security application, but that it was filled out by a consultant Principal Financial hired. Mr. Finan applied for disability benefits in June 2005, after he was discharged. In his application, he not only listed seizure disorder as a illness, injury or condition that limited his employment, but also depression, anxiety, neck, knee and ankle pain. Mr. Finan was awarded Social Security disability benefits on July 18, 2006, for a period beginning February 9, 2004, the date of his discharge. Mr. Finan's testimony before the administrative law judge ("ALJ") was not presented at trial, and the analysis of the medical evidence was redacted from the ALJ's decision. It is unclear, therefore, what was the medical basis for the ALJ's determination.

Plaintiff argues, among other things, that it was not his seizure disorder alone that entitled him to Social Security disability benefits, but a combination of impairments, including depression that arose after his termination. While defendants presented evidence that Mr. Finan's seizure disorder was more severe than what his trial testimony would suggest, and that he made inconsistent statements in his disability applications, this evidence was disputed or refuted. In light of all the evidence presented at trial, the Court finds there was sufficient evidence for the jury to conclude that Mr. Finan's ADA claim was not inconsistent with his application for Social Security disability benefits or the award of such benefits. "Reasonable jurors could conclude from the evidence both that [Mr. Finan] had a good-faith belief in his SSDI statement that he was unable to work and that he could nonetheless perform the essential functions of [his] job, with or without reasonable accommodation." Voeltz v. Arctic Cat, Inc., 406 F.3d 1047, 1051 (8th Cir. 2005) (internal citations omitted). Therefore, the Court will not award remitittur on the jury's back pay award.

## II.     PLAINTIFF'S MOTION FOR EQUITABLE RELIEF

Plaintiff has filed a motion for equitable relief. He requests he either be reinstated or awarded front pay. The ADA supplies not only legal remedies, but equitable remedies to make successful plaintiffs whole. McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 357-58 (1995) (discussing various federal anti-discrimination laws and the means of relief available). Among these remedies available to successful plaintiffs are two alternative types of equitable prospective relief – reinstatement and front pay. Newhouse v. McCormick & Co., Inc., 110 F.3d 635, 641 (8th Cir. 1997). The choice of which prospective equitable remedy, if either, should be awarded in a given case is committed to the sound discretion of the trial court. E.E.O.C. v. HBE Corp., 135 F.3d 543, 555 (8th Cir.1998); Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 322 (8th Cir.1993).

In the current case, plaintiff seeks reinstatement, but he acknowledges that it is probably not feasible because his accounts have been transferred to other salespersons and due to the hostility and animosity the parties harbor toward each other. Defendants assert reinstatement is not an inappropriate remedy. Upon reviewing the record and the parties' demeanor at trial, the Court agrees that reinstatement is inappropriate due to the animosity that exists between the parties. United Paperworkers Int'l Union, AFL-CIO, Local 274 v. Champion Int'l Corp., 81 F.3d 798, 805 (8th Cir. 1996) (observing that "[s]ubstantial hostility, above that normally incident to litigation, is a sound basis for denying reinstatement.")

If reinstatement is not an appropriate form of prospective relief, the Court may elect, at its discretion, to award the equitable remedy of front pay. Denesha v. Farmers Ins. Exch., 161 F.3d 491, 501 (8th Cir.1998) (endorsing the use of front pay as an alternative form of prospective equitable relief in situations where reinstatement is an inappropriate remedy), Standley, 5 F.3d at 322. Front pay is intended to make an employee who was unlawfully discharged whole. Courts have cautioned, however, that an award of front pay should not amount to a "windfall" for the successful plaintiff. See, e.g., Suggs v. ServiceMaster Educ. Food Mgmt., 72 F.3d, 1228, 1234 (6th Cir. 1996) (observing that "[a]wards under Title VII must be reasonable: An employee who was discriminatorily discharged must be made whole, but is not entitled to a windfall."); McKnight v. General Motors Corp., 973 F.2d 1366, 1372 (7th Cir. 1992) ("[y]ou cannot just leave the labor force after being wrongfully discharged, in the hope of someday being made whole by a judgment at law.") (quoting Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1426 (7th Cir. 1986)).

The plaintiff bears the burden of proof in establishing a claim for front pay. A plaintiff must provide the court with the necessary data, including the length of time plaintiff would have worked for the defendant but for the unlawful discrimination and the appropriate rate of pay. McKnight, 973

F.2d at 1372. If a plaintiff fails to supply the district court with the information necessary to "calculate a reasonably certain award," the court may reject the request for front pay. Id. The defendant may challenge the amount, duration, or discount rate of the requested award, as well as assert the "affirmative defense that the plaintiff failed to mitigate damages." Id. In determining the length and amount of front pay, the Eighth Circuit has approved consideration of the length of time the plaintiff has been employed with the defendant-employer and the likelihood employment would have continued absent the discrimination. Standley, 5 F.3d at 322; Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101, 3 F.3d 281, 286 (8th Cir.1993); HBE Corp., 135 F.3d at 555.

Here, Mr. Finan has requested ten (10) years of front pay – until the age of retirement when he turns 65 on December 21, 2017. After consideration of these factors, the Court finds Mr. Finan is entitled to some front pay, but not nearly for the length of time he is requesting. Mr. Finan was employed by defendants for approximately eight years. This is a relatively long tenure and weighs in favor of an award of front pay. Cf. Standley, 5 F.3d at 322 (holding district court did not abuse discretion in refusing to award front pay where plaintiffs were all probationary employees with one-year contracts); HBE Corp., 135 F.3d at 555 (holding five years front pay was too long for two employees who had been with the defendant for only nineteen months and five months respectively). That said, Mr. Finan was an employee at-will. He could have left defendants' employ for any reason and his employment could have been terminated for any lawful reason.

In his position, Mr. Finan was required to travel great distances to visit client sites – up to 80,000 miles a year. There was evidence presented at trial to suggest that Mr. Finan would not have stayed with defendants in his same demanding position until his retirement. For example, plaintiff's wife suffered a brain aneurysm that has left her incapacitated. While Mrs. Finan is in a skilled

nursing facility, plaintiff is her guardian, advocate, and care-giver. His position with defendants was not compatible with caring for his wife. Furthermore, the Court believes Mr. Finan's own health would prevent him from remaining in the outside salesperson position for the next ten years. As discussed above, the fact that Mr. Finan applied for Social Security and private disability benefits does not conclusively plaintiff was unable to work. Evidence from these applications, however, tends to show Mr. Finan would not have remained in his demanding position with the defendants until the age of retirement. For example, Mr. Finan complained of neck, knee, and ankle pain. There was evidence that he has difficulty with fatigue, which may be due to his medications. He has trouble concentrating and is forgetful and disorganized. And while he is not precluded from driving, his physician has found that it would be "prudent" for Mr. Finan to find a job that does not require driving.

In light of his wife's health and his own situation, the Court does not find it credible that Mr. Finan would have remained in his position traveling extensively throughout the United States and Canada as an outside salesperson until December 2017. This is further confirmed by the fact that at trial Mr. Finan testified he proposed that defendants consider hiring him as a consultant or an outside contractor. Furthermore, there was evidence presented that defendants were unhappy with Mr. Finan's performance, even before the onset of his disability, and he had personality conflicts with customers, management and his co-workers. All of this weighs in favor of reducing the amount of front pay.

As for Mr. Finan's efforts to mitigate his damages and find suitable, alternative employment, there was evidence Mr. Finan has actively searched for a job to no avail. In their brief in opposition to plaintiff's motion for front pay, defendants assert in a footnote that plaintiff testified during his deposition that he rejected job offers for comparable jobs, which would preclude him from receiving

front pay. The Court agrees with defendants' assertion of law that rejection of a suitable position precludes the award of front pay, however, they did not provide the Court with the deposition testimony, and no evidence of rejected job offers was solicited at trial. Denesha, 161 F.3d at 502 (defendant "bears the burden of showing that there were suitable positions and that the plaintiff failed to use reasonable care in seeking them.")[3]

In light of all the factors discussed above, the Court believes an award of front pay is appropriate in this case, but finds ten years of front pay is too speculative and would be too excessive an award. Based on the record before it, the Court concludes Mr. Finan would not have remained in defendants' employment for more than thirteen years from the date of his discharge – three years and nine months from the date of his termination to the date of trial and the ten years he is requesting to be compensated in front pay. The Court finds it more likely than not that Mr. Finan would have left defendants' employment, either voluntarily or involuntarily for valid reasons, within five years of February 9, 2004. Therefore, plaintiff is entitled to 14.5 months in front pay for the period from the date of the verdict through February 8, 2009. The Court finds this amount of front pay strikes the proper balance between the need to make plaintiff "whole" and the need to avoid unduly speculative front pay awards.

As for the amount of the front pay, plaintiff requests he be awarded $132,000 a year ($100,000 in base salary and $32,000 in commissions), plus 15% of his salary, which purportedly

---

[3]Defendants have also urged the Court to consider the fact that plaintiff has received "over $50,000.00" in disability payments from the Social Security Administration and his private insurer. Under Eighth Circuit law, income from a collateral source, such as Social Security benefits or disability benefits from a private insurer, are not to be used to reduce a defendant's liability, including front pay. Salitros v. Chrysler Corp., 306 F.3d 562, 573-74 (8th Cir. 2002); Arneson v. Callahan, 128 F.3d 1243, 1248 & n.8 (8th Cir. 1997).

was deposited into a profit sharing account when he was an employee. Defendants opposed this amount, but they did not offer an alternative basis for the front pay calculation.

The Court finds the evidence presented does not support the amount plaintiff is requesting. Mr. Finan testified he was earning a base salary of $100,000 a year. This amount appears to be undisputed. But there was conflicting evidence at trial regarding the amount of commissions Mr. Finan received, and how the profit sharing amounts were calculated. For example, plaintiff never offered into evidence the formula used for the calculation of commissions, and although he testified that he received 15% of his salary in profit sharing, the figures did not add up to this amount.

The jury, apparently, also did not agree with Mr. Finan's proposed calculations for his back pay, which were the same as those he now proposes for his front pay. They awarded plaintiff $410,000 in back pay for the 45.5 months he was out of work since his the date of his discharge. That amounts to an average of $108,131.86 a year in salary, commissions, and/or benefits. In the interest of consistency, the Court also will use this amount in awarding front pay. Voeltz, 406 F.3d at 1052 ( "[i]n fashioning equitable relief, the district court . . . may not base its decision on factual findings that conflict with the jury's findings.") (quoting Salitros v. Chrysler Corp., 306 F.3d 562, 573 (8th Cir.2002)). Accordingly, the Court finds plaintiff is entitled to $130,659.33 for front pay for the period from the date of the verdict through February 8, 2009.

### III.    PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST

Plaintiff filed a motion for pre-judgment interest. An "award of prejudgment interest, in the absence of statutory directives, rests in the discretion of the district court." Cargill, Inc. v. Taylor Towing Service, Inc., 642 F.2d 239, 241 (8th Cir. 1981). The Court is mindful that prejudgment interest "is to be awarded whenever damages lawfully due are withheld, unless there are exceptional circumstances to justify the refusal." Id. at 242. A primary purpose of prejudgment interest is to make an injured party whole, but compensatory principles must be balanced by an assessment of the equities. Id. "Prejudgment interest serves at least two purposes: (1) it helps compensate plaintiffs for the true cost of money damages they have occurred, (2) where liability and the amount of damages are fairly certain, it promotes settlement and deters an attempt to benefit unfairly from the inherent delays of litigation." EEOC v. Rath Packing Co., 787 F.2d 318, 333 (8th Cir. 1986).

The Court believes that an award of prejudgment interest is appropriate in this case to make plaintiff whole. While defendants objected to the imposition of prejudgment interest, they did not object to plaintiff's method of calculation. Therefore, the Court will award plaintiff prejudgment interest in the amount he is requesting, plus the interest that accrued in the first quarter of 2008, for a total of $71,616.28.[4] The Court will amend the judgment to reflect the same.

### IV.    PLAINTIFF'S BILL OF COSTS

In addition to attorneys' fees, plaintiff also requests his costs as the prevailing party in this suit. Plaintiff has filed a bill of costs seeking a total of $7,413.15 in costs. It is presumed that a prevailing party is entitled to costs. See Federal Rule of Civil Procedure 54(d); Bathke v. Casey's

---

[4]Pre-judgment interest was calculated on a quarterly basis using the interest rate for underpayment of taxes used by the Internal Revenue Service in 26 U.S.C. § 6621. See Mennen v. Easter Stores, 951 F. Supp. 838, 867 (N.D. Iowa 1997) (overview of employment discrimination cases applying 26 U.S.C. §6621 for calculation of prejudgment interest).

General Stores, Inc., 64 F.3d 340, 347 (8th Cir. 1995). "When an expense is taxable as a cost, . . . there is a strong presumption that a prevailing party shall recover it in full measure." Concord Boat Corp. v. Brunswick Corp., 309 F.3d 494, 498 (8th Cir. 2002) (internal quotation omitted). "The losing party bears the burden of making the showing that an award is inequitable under the circumstances." Id. (internal citation and quotation omitted). Allowable costs, however, are generally limited to the categories set forth in 28 U.S.C. § 1920. Expenses not on the statutory list must be borne by the party incurring them. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 442-43 (1987). Pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, the Court must carefully scrutinize the claimed costs and the support offered for them. Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 232-33, 235 (1964); Alexander v. National Farmers Org., 696 F.2d 1210, 1212 (8th Cir. 1982); Davis v. Parratt, 608 F.2d 717, 718 (8th Cir. 1979).

Here, plaintiff has requested he be awarded costs from the following categories: fees to the clerk; fees for service of summons and subpoena; deposition costs, including transcripts and court reporter fees; photocopying expenses; fees for witnesses; mediation costs; delivery charges; and the cost of calculating prejudgment interest. The Court will address in turn each item of cost sought by plaintiff.

### A.    Fees to the Clerk

Plaintiff seeks the filing fee for this action. This cost will be taxed pursuant to 28 U.S.C. § 1920(1). The Court will award $350.00 for the cost of filing his lawsuit.

### B.    Fees for Service of Process

Plaintiff also request costs for payment of a special process server to serve the complaint, deposition subpoenas on Robert Schwartze, and trial subpoenas on Dr. Howard Lite, Dr. Lee Tempel, and Steve Steward. The Court will not tax costs for any of the special process server fees

because only Marshals' fees are taxable as costs.  See Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir.1985) (holding a prevailing party may not recover costs related to the use of a special process server); see also Leggett & Platt, Inc. v. Vutek, Inc., 2007 WL 607736, at *2 (E.D. Mo. Feb. 22, 2007); Executive Air Taxi Corp. v. City of Bismarck, 2006 WL 3544386, at *2 (D.N.D. Nov. 7, 2006) (noting that although the role of the federal marshal in civil lawsuits has been diminished since the Eighth Circuit's decision in Crues, district courts remain bound by that decision); Bunda v. Potter, 2006 WL 266513, at *4 (N.D. Iowa Jan. 31, 2006).  Although some other courts have declined to follow the Crues decision, this Court is bound to follow Eighth Circuit precedent.  See, e.g., E.E.O.C. v. W&O, Inc., 213 F.3d 600, 624 (11th Cir. 2000); Alflex Corp. v. Underwriters Labs., Inc., 914 F.2d 175, 178 (9th Cir. 1990).  Therefore, the Court will not tax this cost, which totaled $339.75.

### C.   Transcript and Deposition Costs

Plaintiff seeks a total of $2,604.40 for transcripts costs and/or court reporter attendance fees incurred in depositions of the following witnesses: Keith Williams, Ned Williams, Jonathan Williams, and the plaintiff.  Plaintiff seeks only half of the costs of the three Williams brothers' depositions, because the law firm of Bryan Cave, which represented Margaret Finan, paid the other half.

The Court has broad discretion to tax costs of depositions that are reasonably necessary to the case and that were not taken purely for investigative purposes.  Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 363 (8th Cir. 1997); Slagenweit v. Slagenweit, 63 F.3d 719, 720 (8th Cir. 1995); Koppinger v. Cullen-Schiltz & Assocs., 513 F.2d 901, 911 (8th Cir. 1975).  Absent specific objections that depositions were improperly taken, "deposition costs will be taxed as having been necessarily obtained for use in the case within the meaning of 28 U.S.C. § 1920."  Meder v. Everest & Jennings, Inc., 553 F. Supp. 149, 150 (E.D. Mo. 1982) (internal quotations and citation omitted).

The Court finds, given the role of the persons deposed in the events underlying the action, that the deposition costs for which plaintiff seeks reimbursement were reasonably and necessarily incurred for use in the case. Id. Plaintiff has also established that copies of deposition transcripts of the witness deposed were also necessary. See Anderson v. Christian Hosp. N.E.-N.W., 100 F.R.D. 497, 498 (E.D. Mo. 1984); Morrissey v. County Tower Corp., 568 F. Supp. 980, 982-83 (E.D. Mo. 1983); Meder, 553 F. Supp. at 150. Costs incident to the taking of depositions will be taxed in the amount of $2,604.40.

### D.     Fees for Witnesses

Plaintiff seeks the sum of $100.00 in connection with witness fees. Two witnesses, Dr. Howard Lite and Dr. Lee Tempel, were each paid witness and milage fees in the amount of $50.00. Federal Rule of Civil Procedure 54(d) provides "[a] witness shall be paid an attendance fee of $40 for each day's attendance." See also Crawford Fitting Co., 482 U.S. at 440-41. In addition to the $40.00 witness fee, plaintiff is requesting $10.00 per witness for mileage. Plaintiff, however, has provided no information regarding the mileage each of these witnesses traveled, and therefore, the mileage request will be denied. The Court finds plaintiff is entitled to costs for these two witnesses in the amount of $40.00 each. Morrissey, 568 F. Supp. at 982. Accordingly, costs for fees and disbursements for witnesses will be taxed in the amount of $80.00.

### E.     Photocopies

Plaintiff seeks the sum of $2,965.92 in connection with fees for exemplification and copies of papers, which he asserts were necessarily obtained for use in this case. All but $500.00 worth of these copies were made by outside vendors. For copies made by the outside vendors, the schedule and itemized statements show the date on which each copy was made and the per-page cost. However, in the documentation plaintiff provided, there is no indication whatsoever as to even the

general categories into which the copies fall. As for the copies made "in house" there is even less information. Plaintiff merely provides that 5,000 pages of copies were made at a cost of ten cents per page.

Copying costs may be taxed only if the copied items were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); <u>Morrissey</u>, 568 F. Supp. at 982. Amounts sought for copy expenses must be documented or itemized in such a way that the Court can meaningfully evaluate the request. <u>Yaris v. Special Sch. Dist. of St. Louis County</u>, 604 F. Supp. 914, 915 (E.D. Mo. 1986).

The Court finds plaintiff's request is inadequately documented, and consequently, the Court cannot evaluate whether the copies were necessarily obtained for use in this case and the expense was reasonable. <u>Yaris</u>, 604 F. Supp. at 915; <u>Morrissey</u>, 568 F. Supp. at 982. Therefore, the Court will allow deny plaintiff's photocopying costs in the amount of $2,965.92.

### F. Other Costs

Plaintiff also requests he be awarded other costs for delivering documents, mediation costs and fees paid to another attorney, who calculated the prejudgment interest plaintiff is requesting. None of these costs are provided for under the categories set forth in 28 U.S.C. § 1920. And in fact, courts in this circuit have specifically declined to award many of these costs. <u>See</u> <u>Smith v. Tenet Healthsystem SL, Inc.</u>, 436 F.3d 879, 890 (8th Cir. 2006) (section 1920 does not authorize taxing the losing party with the prevailing party's postage and delivery expenses); <u>Pinkham v. Camex, Inc.</u>, 84 F.3d 292 (8th Cir. 1996) (holding expenses such as long distance, fax, messenger services, and express mail are out-of-pocket expenses and not items of cost under § 1920); <u>Martin v. State Farm Mut. Auto. Ins. Co.</u>, No. 4:96-CV-1179 CAS (E.D. Mo. June 2, 1998) ( a mediator's fees are not an item of taxable cost under 28 U.S.C. § 1920); <u>Simpson v. Board of Ed.</u>, No. 4:96-CV-1619 DJS (E.D. Mo. Dec. 1, 1997) (same); <u>Monte v. Independent Fed'n of Flight Attendants</u>, No. 4:93-CV-

219 CAS (E.D. Mo. Aug. 21, 1996) (same).[5]  Accordingly, the Court declines to award plaintiff $1,053.08 for costs associated with delivering documents, mediation, and the calculation of prejudgment interest.

In conclusion, the Court will grant in part and deny in part plaintiff's bill of costs.  The Court will award plaintiff $3,034.40 in costs for filing fees, deposition costs, and witness fees.

## V.    PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

Plaintiff requests attorneys' fees in the amount of $218,268.75.  Defendants oppose the motion asserting that the attorney fee request is excessive because plaintiff had limited success. They argue the Court should consider Mr. Finan's "moderate success" in this case with his wife's lack of success in the associated case, Margaret E. Finan v. Good Earth Tools, Inc., et al., Case No. 4:06-CV-171 CAS.  They also argue plaintiff's counsel's hours should be significantly reduced because they were not "reasonably expended" as a result of the fact that "plaintiff made this litigation his full time job" and overloaded his attorney with information.

### A.    Standard

"The ADA gives a court discretionary authority to grant the prevailing party attorneys' fees." Shrader v. OMC Aluminum Boat Group, Inc., 128 F.3d 1218, 1220 (8th Cir. 1997) (citing 42 U.S.C. § 12205 (1994)).[6]  The ADA also incorporates by reference Title VII's attorney's fee provision.  See  42 U.S.C. § 12117(a).

---

[5]Furthermore, this Court's local rules provide that absent other agreement each party will bear its own cost of mediation.  See E.D. Mo. Local Rule 6.03(C)(1).

[6]The ADA attorney fees provision states: "In any action . . . commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ."  42 U.S.C. § 12205.

Under 42 U.S.C. § 2000e-5(k), prevailing parties in Title VII actions are entitled, at the district court's discretion, to attorney's fees. St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Local 73 v. City of St. Louis, Mo., 96 F.3d 323, 330 (8th Cir. 1996). "A prevailing plaintiff . . . ordinarily is to be awarded attorney's fees . . . in all but special circumstances." Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 417 (1978). See Kline v. City of Kansas City, Mo., Fire Dept., 245 F.3d 707, 708 (8th Cir. 2001).

The Court does not concur with defendants that plaintiff had limited success in this case. Plaintiff prevailed on one of two counts of his complaint and received a jury verdict of $475,000.00. The Court finds defendants' argument, that one should consider the success of this case in conjunction with the associated case Margaret E. Finan v. Good Earth Tools, Inc., et al., Case No. 4:06-CV-171 CAS, to be without merit. These two cases, which were filed separately, were consolidated on the defendants' motion. Although the cases did involve many of the same operative facts, the plaintiffs in each case had distinct and separate rights. While Mr. Finan may be his wife's guardian, and he may have had much input in how her case was handled, in the end, Mr. Finan was not a party in case number 4:06-CV-171 CAS. Furthermore, plaintiff Margaret Finan and the defendants are seeking separate awards of attorneys' fees in Margaret E. Finan v. Good Earth Tools, Inc., et al. For purposes of deciding prevailing party status, the Court will not consider the cases in conjunction with each other. In light of the jury's verdict, there is no question Mr. Finan was the prevailing party in the above-captioned case.

### B.    Lodestar Amount

In civil rights cases, the starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). As a general proposition, a reasonable hourly rate

is one that corresponds to the prevailing market rates in the relevant community. <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984). The party seeking fees must submit evidence to support the hours worked and the rate claimed. The district court is required to exclude from the initial fee calculation hours that were not "reasonably expended," <u>i.e.</u>, that are excessive, redundant or otherwise unnecessary. <u>Hensley</u>, 461 U.S. at 434.

### 1. *Prevailing Rates*

Attorney Kristen Whittle Parke requests $214,156.25 in fees at a rate of $275.00 an hour for 778.75 hours of work. The Court will grant Ms. Whittle Parke's attorney's fees at a rate of $250.00 an hour. The Court believes that a $250.00 hourly rate is reasonable given the prevailing rates in the St. Louis legal community and Ms. Whittle Parke's experience and qualifications.[7]

Plaintiff also requests he be reimbursed for $2,512.5 for fees incurred by attorney Frank Keefe; $1,000.00 for fees incurred by attorney Mary Anne Sedey, $500.00 for fees incurred by attorney Gail Wechsler, and $100.00 for fees incurred by attorney David Heimos. These four attorneys, however, never entered appearances in this case, and they are not associated with Ms. Whittle Parke's firm. Furthermore, there is no record of these attorneys' rates or the amount of time they spent on this litigation. And aside from Mr. Keefe, no description of the work they performed was provided to the Court. Accordingly, the Court will disallow fees from attorneys Mr. Keefe, Ms. Sedey, Ms. Wechsler, and Mr. Heimos.

---

[7]In another employment discrimination case, this Court awarded a $250.00 rate to an employment attorney who had more experience than Ms. Whittle Parke. See <u>Katoch v. Mediq/PRN Life Support Servs.</u>, 2007 WL 2434052, at *10 (E.D. Mo. Aug. 22, 2007). In <u>Katoch</u>, the attorney had over 23 years of legal experience in state and federal trial and appellate courts. Furthermore, the Court takes judicial notice that $250.00 is a reasonable rate for an experienced partner practicing employment law in the St. Louis metropolitan area. <u>Geissal ex rel. Estate of Geissal v. Moore Med. Corp.</u>, 338 F.3d 926, 935 (8th Cir. 2003) (affirming district court's setting of $250.00 as a reasonably hourly rate for an employment attorney in St. Louis).

## 2. *Reasonable hours expended*

After reviewing plaintiff's motion for attorneys' fees the Court concludes that some of the fee request is unreasonable and excessive. The Court will reduce the fee award accordingly. Defendants complain plaintiff devoted an inordinate amount of time to this case, and that he overloaded his attorney with information in e-mails and documents. The Court has reviewed the bill extensively and indeed there are numerous entries with the description "rec'd and reviewed email from client." Most of these entries were for 0.1 hours, although some were for as much as 7.5 hours, without further explanation. In addition, Ms. Whittle Parke requested an additional 28.4 hours for telephone conferences with her client.[8] Attached to her affidavit are a list of these calls and the time spent on each call. There are no descriptions as to the subject matter of the calls. Over the course of about a year and a half, Ms. Whittle Parke spent approximately 200 hours devoted to client communications – that is, e-mails and telephone conferences. This figure does not include face-to-face meetings.

The Court declines to find, despite defendants' urging, that the amount of time plaintiff and his attorney spent communicating with each other in e-mails or otherwise was per se excessive. The Court, however, is not in a position to evaluate the reasonableness of the time devoted to client communications because the Court was not provided with adequate documentation. An applicant for attorney's fees "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Hensley, 461 U.S. at 437. It is true that counsel is not required to show in exact detail how his time was expended, especially where there are attorney-client

---

[8]On March 11, 2008, plaintiff moved for leave to supplement his motion for attorneys' fees to include documentation of telephone conferences, which was not previously available, and bills from Frank Keefe. Defendants did not oppose the motion. The Court will grant plaintiff's motion to supplement his attorneys' fees request.

privilege issues, but "at least counsel should identify the general subject matter of [her] time expended." Id. at 437, n.12. In light of the lack of proper documentation to support what appears to be an excessive amount of time reviewing e-mails, the Court will deduct some attorney time from the fee award. Defendants have not proposed the amount by which the fee request should be reduced, other than to say that it should be "significant." The Court, therefore, in its discretion and based on the record before it, shall subtract 80 hours from the fee award for excessive billing without adequate documentation.

The defendants posed no other objections to plaintiff's fee request. Therefore, the Court concludes plaintiff is entitled to attorney's fees for 698.75 hours of work at a rate of $250.00 an hour for Ms. Whittle Parke's services for a lodestar figure of $174,687.50. The Court declines to adjust the award of attorney's fees upward or downward based on the results of the litigation, and the Court believes that the award of $174,687.50 adequately compensates plaintiff's attorney for the success achieved. See Hensley, 461 U.S. at 434 (once the initial product of reasonable hours times a reasonable rate is obtained, a court may adjust the fee upward or downward).

### *Conclusion*

In conclusion, the Court will deny defendants' post-trial motion for judgment as a matter of law, for a new trial, and/or remittitur. Plaintiff's motion for equitable relief will be granted in part and denied in part. Plaintiff's motion for prejudgment interest will be granted. The Court will grant in part and deny in part plaintiff's motion for costs. The Court will grant in part and deny in part plaintiff's motion for attorneys' fees.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Good Earth Tools Inc.'s and Ballast Tools Inc.'s motions for judgment as a matter of law, for new trial, and/or to remit damages are **DENIED**. [Doc. 72]

**IT IS FURTHER ORDERED** that as set forth in the Memorandum and Order, plaintiff Thomas Finan's motion for equitable relief and for prejudgment interest is **GRANTED in part and DENIED in part**. Plaintiff Thomas Finan is awarded One Hundred Thirty Thousand Six Hundred Fifty-Nine Dollars and Thirty-Three Cents ($130,659.33) in front pay for the period from the date of the verdict through February 8, 2009. Plaintiff Thomas Finan is awarded Seventy-One Thousand Six Hundred Sixteen Dollars and Twenty-Eight Cents ($71,616.28) for prejudgment interest. In all other respects the motion is denied. [Doc. 74]

**IT IS FURTHER ORDERED** that plaintiff Thomas Finan's third motion for bill of costs is **GRANTED in part and DENIED in part**. [Doc. 79]

**IT IS FURTHER ORDERED** that plaintiff Thomas Finan is awarded costs in the amount Three Thousand Thirty-Four Dollars and Forty Cents ($3,034.40).

**IT IS FURTHER ORDERED** that plaintiff Thomas Finan's first motion for attorneys' fees is **DENIED as moot.** [Doc. 80]

**IT IS FURTHER ORDERED** plaintiff Thomas Finan's motion for leave to file amended motion for attorneys' fees and memorandum in support thereof is **GRANTED.** [Doc. 81]

**IT IS FURTHER ORDERED** that plaintiff Thomas Finan's motion for leave to supplement his amended motion for attorneys' fee is **GRANTED.** [Doc. 89].

**IT IS FURTHER ORDERED** that plaintiff Thomas Finan's amended motion for attorneys' fees is **GRANTED in part and DENIED in part.** [Doc. 82]

**IT IS FURTHER ORDERED** that plaintiff Thomas Finan is awarded attorney's fees in the amount of One Hundred Seventy-Four Thousand Six Hundred Eighty-Seven Dollars and Fifty Cents. ($174,687.50).

An amended judgment will accompany this memorandum and order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this ___21st___ day of April, 2008.